NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANDREW YOUNG,<br><br>Plaintiff,<br><br>v.<br><br>HON. KIMBERLY S. CASTEN, *in her individual capacity*,<br><br>Defendant. | Civil Action No. 25-14857 (RK) (JBD)<br><br>**MEMORANDUM ORDER** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon an application to proceed *in forma pauperis*, ("IFP," ECF No. 1-2)[1], filed by *pro se* Plaintiff Andrew Young ("Plaintiff"), along with a Complaint, ("Compl.," ECF No. 5).[2] Plaintiff has also filed two *ex parte* Emergency Motions seeking the same relief as that in his Complaint. (ECF Nos. 4, 6.) For the reasons set forth below, the Court **DENIES** Plaintiff's application to proceed *in forma pauperis*, **DISMISSES** the Complaint, and **DENIES** Plaintiff's two Emergency Motions.

**I.     BACKGROUND**

Plaintiff has brought suit against the Honorable Kimberly S. Casten, J.S.C. ("Judge Casten")—who is presiding over ongoing state court domestic violence litigation between Plaintiff and his wife—for a litany of purported constitutional violations he believes have occurred throughout the litigation. *See Rosemarie Tupper v. Andrew Young*, No. FV-15-000212-26 (N.J.

---

[1] Plaintiff filed his initial pleading and *in forma pauperis* application on August 22, 2025. (ECF No. 1, 1-2.) On August 27, 2025, Plaintiff re-filed an identical *in forma pauperis* application seeking an "immediate decision" on his application. (ECF No. 8.)

[2] Prior to this Court screening Plaintiff's original pleading pursuant to 28 U.S.C. § 1915(a), Plaintiff filed an amended pleading on August 26, 2025. (ECF No. 5.) The Court will treat the amended pleading as the operative Complaint in this case for screening purposes.

Super. Ct., Ch. Div.) (the "DV Litigation"). Of most concern to Plaintiff, a Temporary Restraining Order (the "State TRO") was entered against him on August 4, 2025 which barred Plaintiff from accessing his family's home in Manahawkin, New Jersey.[3] (Compl. ¶¶ 12–13, 30; ECF No. 1-6 at 3 (State TRO signed by the Honorable Charles Bauer, J.S.C.).) The State TRO also precluded Plaintiff from accessing his "Cavalier Kennels" dog breeding business, which appears to operate out of the Manahawkin home.[4] (Compl. ¶¶ 12, 31.) Subsequent to the issuance of the State TRO, it appears Judge Casten has been responsible for granting continuances to Plaintiff's wife prior to the Final Restraining Order Hearing, which Plaintiff alleges has unconstitutionally prolonged the State TRO's restrictions.[5] (Compl. ¶¶ 27–29; *see, e.g.*, ECF No. 1-6 at 12–13.)

Plaintiff takes issue with at least eight aspects of his still-ongoing DV Litigation. *First*, Plaintiff alleges that his wife has vacated the Manahawkin home and thus the State TRO precluding him from entering the home serves no purpose. (Compl. ¶¶ 15–18.) *Second*, Plaintiff contests Judge Casten's denial of his request for appointed counsel during the DV Litigation. (*Id.* ¶ 19.) *Third*, Plaintiff argues Judge Casten is applying an "inadequate 51% evidence standard" during

---

[3] Plaintiff attached a number of exhibits to his initial pleading which the Court has reviewed. (ECF Nos. 1-5–1-8.) *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[C]ourts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."). These exhibits are primarily comprised of filings in the DV Litigation, including the State TRO (ECF No. 1-6 at 1–5), but also include emails concerning Plaintiff's rehomed dog and energy bills meant to demonstrate that Plaintiff's wife is no longer residing in the Manahawkin home (*see* ECF Nos. 1-5 (emails), 1-7 (energy bills).).

[4] In addition to being precluded from accessing his dog breeding business, Plaintiff also alleges that at least one of the Cavalier King Charles Spaniels he breeds was moved to New York. (Compl. ¶ 33.) The State TRO indicates that Plaintiff's wife rehomed this dog after Plaintiff allegedly threw the dog across a room into a wall. (*Id.* at 1.)

[5] The New Jersey Domestic Violence Procedures Manual indicates that adjournments may be granted for "good cause." *New Jersey Domestic Violence Procedures Manual* § IV(G)(2) (2022). It appears Judge Casten granted one continuance due to Plaintiff's wife being hospitalized (ECF No. 1-6 at 12) and a second continuance following a request from counsel for Plaintiff's wife (ECF No. 1-6 at 13). The Complaint also alleges that counsel for Plaintiff's wife requested a third continuance. (Compl. ¶ 82–83.) In Plaintiff's subsequent Emergency Motion, he represents that Judge Casten granted this third continuance request. (ECF No. 6 at 2.) Plaintiff's Final Restraining Order Hearing is now set for September 8, 2025. (*Id.*)

the DV Litigation. (*Id.* ¶ 20.) *Fourth*, Plaintiff complains that he cannot access "exculpatory evidence located in his marital home" due to the State TRO. (*Id.* ¶ 21.) *Fifth*, Plaintiff argues he should have been provided notice "of federal firearm prohibitions and criminal penalties" upon the issuance of the State TRO.[6] (*Id.* ¶ 22.) *Sixth*, Plaintiff takes issue with three continuances that Judge Casten has granted to Plaintiff's wife. (*Id.* ¶¶ 23–25, 27–29.) *Seventh*, Plaintiff asserts that Judge Casten has provided him with no "constitutional information," such as "how to call witnesses," "how to use media to present evidence," and "how to subpoena evidence."[7] (*Id.* ¶ 26.) *Finally*, Plaintiff argues that Judge Casten has violated his constitutional equal protection rights by "appl[ying] different constitutional standards to domestic violence defendants than to other civil litigants." (*Id.* ¶ 38.)[8]

The Complaint is comprised of nine counts alleging 42 U.S.C. § 1983 constitutional violations under the First, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution (*id.* ¶¶ 41–62, 71–84), as well as a violation of the Supremacy Clause (*id.* ¶¶ 63–66) and a claim of "bad faith enforcement" (*id.* ¶¶ 67–70). Plaintiff asks this Court for a variety of

---

[6] Contrary to Plaintiff's allegation, the State TRO clearly includes the aforementioned notice:
> **Prohibition Against Possession of Weapons**: You are prohibited from possessing any and all firearms or other weapons and must immediately surrender these firearms, weapons, permit(s) to carry, application(s) to purchase firearms and firearms purchaser ID card to the officer serving this Court Order. Failure to do so may result in your arrest and incarceration. INCLUDING ANY AND ALL AMMUNITION.

(ECF No. 1-6 at 4.)

[7] Attached to the Complaint is a pamphlet Plaintiff appears to have been provided in state court entitled "Preparing for a Domestic Violence Final Restraining Order Hearing" that provides in-depth information as to the procedure for the hearing and how Plaintiff could access additional legal resources to assist him in preparing for his case. (ECF No. 1-6 at 6–11.) The pamphlet specifically instructs: "If you have any evidence you wish to present at the hearing . . . you must contact the court prior to the hearing for instructions on providing this evidence." (*Id.* at 7.)

[8] Throughout his explication of alleged constitutional violations, Plaintiff cites to a series of cases that he describes as "this Court's precedent" and "this Court's established constitutional standards." (*See, e.g.*, Compl. ¶¶ 13, 17.) The Court has been unable to locate any of these cases using traditional research methods and indeed is skeptical that any of these cited cases actually exist, let alone stand for the propositions for which they are cited.

reliefs, including (i) declaring the State TRO unconstitutional; (ii) enjoining the State TRO to allow Plaintiff to access the family home, operate his dog breeding business, and recover his rehomed dog; and (iii) enjoining Judge Casten "from enforcing unconstitutional domestic violence procedures" and to instead "implement constitutional procedures." (*Id.* at 17–18.)

With his initial pleading, Plaintiff also filed an application to proceed *in forma pauperis*. (IFP.) The application is only minimally completed. (*Id.*) However, the form indicates Plaintiff has averaged $2,000 in monthly income over the past 12 months, holds $75 in checking and savings accounts, and owns a home valued at $10,000. (*Id.* at 1–3.) The application also indicates Plaintiff has expenses totaling $2,720 per month due to, among other things, mortgage payments, utility payments, and car payments. (*Id.* at 4–5.) Plaintiff filed a supplement to his *in forma pauperis* application[9] emphasizing his indigency and noting that his monthly income has dropped to $0 following the issuance of the State TRO. (ECF No. 1-3.)

On the same day that Plaintiff filed his initial pleading and *in forma pauperis* application, Plaintiff also filed an Emergency Motion for a Temporary Restraining Order and Preliminary Injunction. (ECF No. 4.) Plaintiff filed a second Emergency Motion four days later. (ECF No. 6.) Both *ex parte* Emergency Motions seek the same relief requested in the Complaint, namely, the enjoining of the State TRO and the implementation of "constitutional procedures" by Judge Casten. (ECF No. 4 at 10; ECF No. 6 at 9.)

II.     **LEGAL STANDARD**

Pursuant to 28 U.S.C. § 1915(a), the District Court may authorize a plaintiff to proceed *in forma pauperis* and order a complaint to be filed without requiring the prepayment of filing fees. The statute "is designed to ensure that indigent litigants have meaningful access to the federal

---

[9] Five days after filing his initial *in forma pauperis* application, Plaintiff filed two copies of a duplicative application. (ECF No. 8.)

4

courts." *Deutsch v. United States*, 67 F.3d 1080, 1084 (3d Cir. 1995) (quoting *Neitzke v. Williams*, 490 U.S. 319, 324 (1989)). However, to guard against potential "abuse" of "cost-free access to the federal courts," *id.* (citing *Denton v. Hernandez*, 504 U.S. 25, 31 (1992)), section 1915(e) empowers the District Court to dismiss an *in forma pauperis* complaint if it "is frivolous or malicious" or "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e).

Thus, the District Court engages in a two-step analysis when considering a complaint filed with an *in forma pauperis* application: "First, the Court determines whether the plaintiff is eligible to proceed under 28 U.S.C. § 1915(a). . . . Second, the Court determines whether the Complaint should be dismissed as frivolous or for failure to state a claim upon which relief may be granted, as required by 28 U.S.C. § 1915(e)." *Archie v. Mercer Cnty. Courthouse,* No. 23-3553, 2023 WL 5207833, at *2 (D.N.J. Aug. 14, 2023) (citing *Roman v. Jeffes*, 904 F.2d 192, 194 n.1 (3d Cir. 1990)).

## III.  DISCUSSION

### A.  *IN FORMA PAUPERIS* APPLICATION

In order to proceed *in forma pauperis,* Section 1915(a) requires Plaintiffs to submit "an affidavit stating all income and assets, the plaintiff's inability to pay the filing fee, the 'nature of the action,' and the 'belief that the [plaintiff] is entitled to redress.'" *Martinez v. Harrison*, No. 23-3513, 2023 WL 5237130, at *1 (D.N.J. Aug. 15, 2023) (alteration in original) (quoting 28 U.S.C. § 1915(a)). In the IFP application, the plaintiff "must state the facts concerning his or her poverty with some degree of particularity, definiteness or certainty." *Gross v. Cormack*, No. 13-4152, 2013 WL 5435463, at *2 (D.N.J. Sept. 27, 2013) (quoting *Simon v. Mercer Cnty. Comm. College*, No. 10-5505, 2011 WL 551196, at *1 (D.N.J. Feb 9, 2011)).

While Plaintiff's *in forma pauperis* application indicates he has monthly expenses that are higher than his monthly income, the majority of the application has been left completely blank.

5

(*See* IFP at 1 (directing applicants to "not leave any blanks").) Thus, the application "does not include sufficient information for the Court to properly evaluate it or to confirm whether Plaintiff is able to pay the court fees." *Hedgepeth v. Helen Fuld Hosp.*, No. 22-6029, 2023 WL 4108510, at *1 (D.N.J. June 21, 2023). For example, while Plaintiff wrote in his application that he earned only $2,000 per month over the past 12 months (IFP at 1), his Complaint is replete with references to his dog breeding business being worth $290,000. (*See* Compl. ¶¶ 12, 32, 44.) Nowhere in Plaintiff's application does he account for this high-value business. Additionally, Plaintiff's IFP application is internally inconsistent: he asserts that he made an average of $2,000 per month over the last twelve months through self-employment (IFP at 1) but that he had $0 in gross monthly pay over the last two years from his self-employed dog breeding business (*id.* at 2). Therefore, because it is incomplete, the Court **DENIES** Plaintiff's *in forma pauperis* application.

### B. REVIEW OF COMPLAINT

Although a court is not required to conduct a screening of a complaint after denying an *in forma pauperis* application, the Third Circuit has endorsed a "flexible approach" that allows a court to dismiss a case "at any time . . . regardless of the status of a filing fee." *Brown v. Sage*, 941 F.3d 655, 660 (3d Cir. 2019). The Court proceeds to screen Plaintiff's Complaint here in an effort to "conserve judicial resources" later. *See id.*

The Court may dismiss any claims that are "(1) . . . frivolous or malicious; (2) fail[] to state a claim upon which relief may be granted; or (3) seek[] monetary relief from a defendant immune from such relief." 28 U.S.C. § 1915(e)(2)(B). "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012). A court must be mindful to hold a *pro se* plaintiff's

6

complaint to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

Plaintiff's claims for injunctive and declaratory relief against Judge Casten amount to asking this Court to vitiate the State TRO and otherwise exert control over Plaintiff's pending DV Litigation in state court. The Court first addresses Plaintiff's claims for injunctive relief and then turns to his claims for declaratory relief.

    i.    <u>Injunctive Relief</u>

The Complaint includes eight requests for injunctive and what Plaintiff refers to as "affirmative" relief. (Compl. at 17–18.) Plaintiff asks this Court to: (i) enjoin Judge Casten "from enforcing unconstitutional domestic violence procedures," (ii) enjoin enforcement of the State TRO; (iii) order Judge Casten "to implement constitutional procedures" during future hearings; (iv) permit Plaintiff access to the Manahawkin home; (v) order the "immediate return of all marital assets constituting the Cavalier Kennels breeding program," (vi) order the return of his rehomed dog; (vii) direct federal law enforcement to "coordinate with local and interstate law enforcement to ensure compliance with asset return orders"; and (viii) "[e]njoin any further dissipation of marital assets during [the] pendency of constitutional challenge." (*Id.*)

Plaintiff's requests for injunctive relief fail because "§ 1983 bar[s] [] claims for injunctive relief against [] state court judges." *Corliss v. O'Brien*, 200 F. App'x 80, 84 (3d Cir. 2006); *Rutkowitz v. Turner*, No. 17-6622, 2018 WL 3388306, at *5 (D.N.J. July 12, 2018) (noting judicial immunity "bars injunctive relief against State Court judges brought under" § 1983.) Indeed, 42 U.S.C. § 1983 states that "injunctive relief shall not be granted" in an action brought against "a judicial officer for an act or omission taken in such officer's judicial capacity . . . unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983; *see Azubuko v. Royal*, 443 F.3d 302, 304 (3d Cir. 2006). Whether an act is undertaken in a judge's

7

"judicial" capacity depends upon whether the act "is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Stump v. Sparkman*, 435 U.S. 349, 362 (1978). As the United States Supreme Court has made clear, "[a] judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Id.* at 356–57 (citation omitted).

While Plaintiff alleges Judge Casten has made numerous purported errors throughout the course of the DV Litigation, it is clear that Judge Casten has not acted in the absence of jurisdiction. All of Judge Casten's actions that Plaintiff protests are actions taken pursuant to Judge Casten's jurisdiction over the DV Litigation. These actions include granting requests for continuances and denying Plaintiff's request for counsel—both actions typically undertaken by a judicial officer as part of her official duties. *See Gallas v. Sup. Ct. of Pa.*, 211 F.3d 760, 770 (3d Cir. 2000) (holding issuance of an order "undeniably was a judicial act").

Furthermore, the Complaint does not contain any allegations to suggest that "a declaratory decree was violated or declaratory relief was unavailable" to Plaintiff. 42 U.S.C. § 1983. Indeed, Plaintiff expressly seeks declaratory relief in his Complaint. (Compl. at 17); *see Rush v. Wiseman*, No. 09-4385, 2010 WL 1705299, at *11 (E.D. Pa. Apr. 27, 2010) (finding judicial immunity where "declaratory relief [was] not unavailable" but nonetheless denying plaintiff's requests for declaratory relief "because [p]laintiff ha[d] not pleaded a legally cognizable claim for declaratory relief"). Thus, Judge Casten is immune from suit insofar as Plaintiff seeks injunctive relief.[10]

---

[10] Even assuming *arguendo* that Judge Casten herself was not immune from suit, the 1793 Anti-Injunction Act imposes "an absolute prohibition [ ] against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions." *Atl. Coast Line R. Co. v. Bhd. Of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970). The Act's three narrowly-read exceptions apply only "when expressly authorized by statute, necessary in aid of the court's jurisdiction, or necessary to protect or effectuate the court's judgment." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988). None of the exceptions apply here. Plaintiff merely asks the Court to order Judge Casten to "implement constitutional procedures"

8

Because Plaintiff only contests actions taken by Judge Casten in her judicial capacity, any amendment of Plaintiff's claims for injunctive relief would be futile. *See, e.g., Ross v. Essex Cnty. Ct.*, No. 23-3122, 2024 WL 2954282, at *1 (D.N.J. June 12, 2024) (indicating judicial immunity is a "formidable obstacle[ ]" to any amendment (citation omitted)), *appeal dismissed sub nom. Ross v. Essex Cnty. Superior Ct.*, No. 24-2315, 2024 WL 5326461 (3d Cir. Dec. 9, 2024). Thus, Plaintiff's claims for injunctive relief are **DISMISSED** with prejudice. *See, e.g., Acuna-Viales v. Pasquale*, No. 24-1048, 2024 WL 3272835, at *4 (D.N.J. July 2, 2024) (finding state court judge entitled to judicial immunity and holding that "the claims against her . . . are dismissed with prejudice pursuant to the Court's screening authority under § 1915(e)(2)(B)"), *appeal dismissed*, No. 24-2483, 2024 WL 5398582 (3d Cir. Dec. 17, 2024).

    ii.    Declaratory Relief

While § 1983 bars claims for injunctive relief "against [] state court judges," it does not bar "the availability of declaratory relief against judicial officers." *Corliss*, 200 F. App'x at 84. Plaintiff asks this Court to declare the State TRO unconstitutional, declare that "federal constitutional timing requirements override state court scheduling preferences," and declare that "constitutional deprivation proceedings require adequate procedural information and guidance." (Compl. at 17.)

At the outset, it is clear that "Plaintiff here does not truly seek declaratory relief," but rather, injunctive interference with the DV Litigation. *Green-Bey v. Atl. Cnty.*, No. 21-20143, 2022 WL 2532665, at *2 (D.N.J. July 7, 2022) (finding "[s]uch relief is not permitted under § 1983"), *aff'd*,

---

and enjoin her from "enforcing unconstitutional domestic violence procedures." (Compl. at 17), Plaintiff cites no statute which would authorize his suit, nor does it appear that interfering with the DV Litigation is either necessary to aid in this Court's jurisdiction or necessary to effectuate a judgment. What's more, to the extent Plaintiff asks this Court to enjoin the enforcement of the State TRO, (*id.* at 17–18), the *Rooker–Feldman* doctrine "does not allow a plaintiff to seek relief that, if granted, would prevent a state court from enforcing its orders." *Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 422 (3d Cir. 2003).

9

No. 22-2348, 2022 WL 17546302 (3d Cir. Dec. 9, 2022). Furthermore, "[d]eclaratory judgment is inappropriate solely to adjudicate past conduct." *Corliss*, 200 F. App'x at 84. Rather, in order to be entitled to declaratory relief, Plaintiff must "show a likelihood of future injury." *Rutkowitz*, 2018 WL 3388306, at *5.

To the extent Plaintiff's requests for declaratory relief can be construed as seeking different relief than that in his requests for injunctive relief, Plaintiff's requests focus on past harms, not the likelihood of future injury. For example, Plaintiff takes issue with a number of *past* actions in his DV Litigation: (i) the issuance of the State TRO; (ii) the denial of his request for appointed counsel; (iii) the application of an "inadequate" evidentiary standard; (iv) his inability to access "exculpatory evidence" located in the Manahawkin home; (v) his purported—and incorrect—belief that he was not provided notice "of federal firearm prohibitions and criminal penalties" upon issuance of the State TRO; (vi) the granting of three continuances to Plaintiff's wife; (vii) Judge Casten's purported failure to provide him with any "constitutional information," such as "how to call witnesses" and "how to subpoena evidence"; and (viii) Judge Casten's application of "different constitutional standards to domestic violence defendants than to other civil litigants." (Compl. ¶¶ 15–29, 38.) All of these issues are related to *past* events in state court.

Plaintiff's only explicit reference to some sort of *future* harm is his allegation that Judge Casten "will continue to apply a '51% preponderance' evidence standard" throughout the DV Litigation. (Compl. ¶ 20.) Plaintiff appears to be referring to the "preponderance of the evidence" standard common across civil litigation. (*See* ECF No. 1-6 at 6 (pamphlet provided to Plaintiff on Final Restraining Order Hearings noting that the burden of proof is "the preponderance of the evidence" which "requires a 51% or greater probability").) Plaintiff appears to argue that a "substantially higher evidence standard[]" should be used. (Compl. ¶ 20.)

This allegation of "future" harm is nothing more than speculative. *First*, Plaintiff cannot demonstrate that it would be incorrect for Judge Casten to apply the preponderance of the evidence standard at the Final Restraining Order Hearing. *See Peterson v. Peterson*, 863 A.2d 1059, 1063 (N.J. Super. Ct. App. Div. 2005) ("Prior to the issuance of a final restraining order, the allegations in the domestic violence complaint must be proven by a preponderance of the credible evidence." (citing N.J. Stat. Ann. 2C:25-29(a))). *Second*, Plaintiff cannot predict that Judge Casten's application of this standard will actually cause him harm—he has not asserted that the outcome of his case would be any different upon the application of a different evidentiary standard. Consequently, Plaintiff cannot show "there is a substantial likelihood that he will suffer injury in the future." *Lattaker v. Rendell*, 269 F. App'x 230, 233 (3d Cir. 2008) (citation omitted). Thus, because Plaintiff's requests for declaratory relief are either grounded in past harm or fail to show a likelihood of future harm, his remaining claims for declaratory relief are dismissed.

For the reasons stated hereinabove, amendment of Plaintiff's claims for declaratory relief would be futile. Plaintiff will never be able to base a claim for declaratory relief on past harm. *See, e.g.*, *Willis v. O'Toole*, No. 18-290, 2019 WL 1585099, at *5 (W.D. Pa. Mar. 8, 2019) (recommending dismissal with prejudice of claims for declaratory relief against state judge where plaintiff did not allege "facts to suggest that she is likely to suffer *future* injury as a result of actions of a named defendant" (emphasis in original)), *report and recommendation adopted*, 2019 WL 1585138 (W.D. Pa. Apr. 12, 2019), *aff'd*, 804 F. App'x 116 (3d Cir. 2020). Further, Plaintiff cannot demonstrate a "substantial likelihood" of future harm based upon Judge Casten hypothetically applying what appears to this Court to be the correct evidentiary standard in Plaintiff's DV Litigation. Regardless, it is not for this Court to preemptively intervene in the DV Litigation. *Sanchez v. Gonzalez*, No. 05-2552, 2005 WL 2007008, at *2 (D.N.J. Aug. 16, 2005) ("[I]t is not generally the role of the federal courts to interfere in pending state judicial proceedings."). Should

Plaintiff disagree with Judge Casten's application of the law at his upcoming September 8, 2025 Final Restraining Order Hearing, he will have ample opportunity to appeal in state court. Accordingly, Plaintiff's remaining claims seeking declaratory relief are **DISMISSED** with prejudice.[11]

      **THEREFORE**, it is on this 2nd day of September, 2025, **ORDERED** that:

1. Plaintiff's application to proceed *in forma pauperis*, (ECF No. 1-2), is **DENIED**;

2. Plaintiff's Complaint, (ECF No. 5), is **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915(e);

3. Plaintiff's Emergency Motions (ECF Nos. 4, 6) are **DENIED**;

4. The Clerk's Office is directed to **CLOSE** this case; and

5. The Clerk's Office shall serve on Plaintiff by regular U.S. mail this Memorandum Order to his address of record.

                                                                       _____
                                                                       **ROBERT KIRSCH**
                                                                       **UNITED STATES DISTRICT JUDGE**

---

[11] Because the Complaint has been dismissed with prejudice *in toto*, and Plaintiff's two *ex parte* Emergency Motions seek the same relief as that in the Complaint, Plaintiff cannot demonstrate "a reasonable probability of eventual success in the litigation" that would warrant granting emergent, *ex parte* relief. *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (citing *Del. River Port Auth. v. Transamerican Trailer Transp., Inc.*, 501 F.2d 917, 919–20 (3d Cir. 1974)). Thus, the Emergency Motions (ECF Nos. 4, 6) are **DENIED**.